## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

HOWARD LANGER,                              :
1717 Arch Street, Suite 4130                :
Philadelphia, PA 19130                      :
                                            :
                    Plaintiff,              :        CIVIL ACTION NO. _____
                                            :
        v.                                  :
                                            :
                                            :
DEPARTMENT OF JUSTICE,                       :
Pennsylvania Ave., N.W.                      :
Washington, DC 20530-0001,                   :
                                            :
                    Defendant.              :
_____           :

## COMPLAINT

Plaintiff Howard Langer brings this action against Defendant United States

Department of Justice to compel compliance with the Freedom of Information Act, 5

U.S.C. § 552 ("FOIA"). As grounds for this action, Plaintiff alleges as follows:

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this action pursuant to 5 U.S.C.

§ 552(a)(4)(B) and 28 U.S.C. § 1331.

2.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(e).

## PARTIES

3.      Plaintiff Howard Langer is the founding partner of Langer, Grogan &

Diver, P.C. ("LGD"), which is located at 1717 Arch Street, Suite 4130, Philadelphia, PA

19130. LGD has represented and continues to represent individuals who have been

harmed by financial institutions that allow fraudulent mass-marketing entities access to the banking system.

4.      Defendant is an agency of the United States Government and is headquartered at U.S. Department of Justice, 950 Pennsylvania Ave., N.W., Washington, DC 20530-0001. Defendant has possession, custody, and control of the records to which Plaintiff seeks access.

5.      This case seeks production of a letter written by the Federal Reserve Bank that us in the possession of the United States Department of Justice. The Department of Justice quoted this letter in a public complaint filed in *United States v. First Bank of Delaware,* Civ. No. 12-6500 (E.D.Pa).

## STATEMENT OF FACTS

6.      "Mass-marketing fraud" refers to fraud schemes that use the Internet, telephone system, and mail to induce victims into providing their bank account information. This information is then used to raid victims' bank accounts or is sold to a third-party so that that entity may conduct such a raid. The Department of Justice estimates that the financial harm caused by these frauds "can be estimated in the tens of billions of dollars." Mass-Marketing Fraud, Department of Justice, http://www.justice.gov/criminal/fraud/internet/.

7.      To accomplish their raids on victims' accounts, mass-marketing frauds typically employ third-party "payment processors," which can turn account information into electronic debits that can be cleared between banks through the Automated Clearing House ("ACH") Network. Only certain banks have access to the ACH Network, and thus

the payment processors must enlist a bank with access to the ACH Network to carry out the transaction.

8.      The enabling by financial institutions of mass-marketing frauds is a matter of national importance. *See, e.g.*, Charles Duhigg, *Bilking the Elderly, With a Corporate Assist*, N.Y. TIMES, May 20, 2007 (http://www.nytimes.com/2007/05/20/business/20tele.html); Jessica Silver-Greenberg, *Banks Seen as Aid in Fraud against Older Consumers*, N.Y. TIMES, June 20, 2013, at A1 (http://nyti.ms/17DhBDF).

9.      The Department of Justice has filed several actions against financial institutions that have supported mass-marketing fraud. Of particular relevance to this action, in November 2012, the Department of Justice, the FDIC, and FinCen took action against the First Bank of Delaware. The regulators found: "First Bank of Delaware established direct relationships with several fraudulent merchants and third-party payment processors working in cahoots with a large number of additional fraudulent merchants. On behalf of the processors and fraudulent merchants, First Bank of Delaware originated hundreds of thousands of debit transactions against consumers' bank accounts." "Department of Justice Announces $15 Million Settlement with Local Bank Accused of Consumer Fraud," U.S. Dept. of Justice, Nov. 19, 2012, at 2.

10.     In support of their claim that the First Bank of Delaware knew that it was facilitating fraudulent transactions, the regulators relied on the percentage of transactions that were rejected and "returned" from victims' banks.

11.     Returns are rare. If a single account is generating a significant number of returns it is an indication that fraudulent activity may be present because returns occur either when a consumer stops payment after realizing that she or he has been defrauded

or after a consumer discovers that unauthorized charges have posted to his or her account. Returns can also occur when a consumer closes the compromised account and shifts his or her funds to a new one, when an account has insufficient funds, or when an invalid account number is submitted.

12.     Regulators require banks to carefully monitor such returns. *See, e.g.,* Office of the Comptroller of the Currency ("OCC") Bulletin No. 2006-39, n.13 (warning banks that high-risk originators in the ACH Network can be identified by "an unusually high volume of unauthorized returns," and noting that, in addition to unauthorized rates, "[u]nusually high levels of returns for other reasons (e.g., nonsufficient funds (NSF), invalid account, or account not found) may also be indicative of fraud."). The OCC has specifically warned: "Generally, a bank should not accept high levels of returns regardless of the return reason." OCC Bulletin No. 2008-12 ("Payment Processors: Risk Management Guidance"), n.7.

13.     In its complaint against the First Bank of Delaware, the Department of Justice quoted a May 2010 letter from a Federal Reserve official to an Officer of First Bank:

> [A] return rate of 10% (which is on its face significantly in excess of industry norms) would likely be regarded by bank supervisory agencies and/or law enforcement agencies as prima facie evidence that your bank knew or should have known that your [third-party payment processors and/or merchants] had engaged in fraudulent activities.  Whether a return rate of 10% might expose your bank to potential liability is an issue that we urge you to consider carefully in consultation with your legal counsel.

Exhibit A, at ¶ 64.

14.     On February 5, 2013, Plaintiff sent a FOIA request to Defendant seeking the source document that the Department of Justice quoted in its complaint against the First Bank of Delaware. Exhibit B.

15.     Defendant did not comply with the time limit set forth in 5 U.S.C. §552(a)(6)(A). On May 28, 2014, the Department of Justice denied the request and withheld disclosure of the letter in full, claiming that the document was exempt from disclosure pursuant to 5 U.S.C. §552(b)(4). Exhibit C. This code section exempts "trade secrets and commercial or financial information obtained from a person and privileged or confidential."

16.     Plaintiff timely appealed this denial on May 30, 2014. Exhibit D. Plaintiff explained that by quoting the letter in a public complaint, any confidentiality was waived. Plaintiff also explained that the information sets forth a Federal Reserve standard and does not constitute material properly protected under 5 U.S.C. §552 (b)(4). *Id*.

17.     Plaintiff offered to accept a redacted version of the letter containing the letterhead, addressee, date, text quoted in Defendant's Complaint against the First Bank of Delaware, and signature block. *Id*. This would have eliminated any possible disclosure of confidential information. This material represents a "reasonably segregable portion of a record," which "shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b).

18.     On November 17, 2014, the appeal appeared to have been successful, and the Defendant remanded "for further processing of the responsive records," while, at the same time advising plaintiff that its action was ripe for appeal to the United States District Court.  Exhibit E.

19.     On December 11, 2014, almost two years after plaintiff filed his request; after plaintiff had exhausted his remedies with the Department of Justice; and after his appeal was "remanded for further processing of the responsive records," the Department of Justice advised plaintiff that rather than producing the document, it was referring his request to the Federal Reserve System in "accordance with 28 C.F.R. § 16.4 and/or 16.42." In the same letter, it stated in bold print: "**These records were found in the U.S. Attorney's Office**." Exhibit F.

20.     The Department of Justice referred the matter to the Federal Reserve Bank of Atlanta under 28 C.F.R. § 16.4 and/or 16.42, after 22 months of consideration within the Justice Department, even though, on its face, §16.42 does not apply to the FOIA request at issue and § 16.4 allows referral to a separate agency "only if that agency is subject to FOIA."

21.     The Federal Reserve Bank of Atlanta is not an agency subject to FOIA. In fact, on February 19, 2013, the Federal Reserve Bank of Atlanta wrote to plaintiff: "The Federal Reserve Bank of Atlanta is not an 'agency' as that term is defined in The Freedom of Information Act, 5 U.S.C. § 552, and is therefore not subject to its provisions." Exhibit G.

22.      On February 2, 2015, the Federal Reserve referred back to the February 19, 2013 letter from the Federal Reserve Bank of Atlanta and refused to produce the document. Exhibit H.

23.     Thus, after over two years of what can only be described as an administrative run around, the Department of Justice has refused—on now unstated grounds—to produce a record it publicly quoted in a Complaint.

## COUNT 1
### (Violation of FOIA, 5 U.S.C. § 552)

24.     Plaintiff re-alleges and incorporates by reference the forgoing paragraphs as if fully stated herein.

25.     Defendant is unlawfully withholding records requested by Plaintiff pursuant to 5 U.S.C. §552.

26.     Plaintiff is being harmed by reason of Defendant's unlawful withholding of the requested records, and Plaintiff will continue to be harmed unless Defendant is compelled to conform its conduct to the requirements of the law.

WHEREFORE, Plaintiff respectfully requests that the Court: (1) order Defendant to conduct a search for the non-exempt record requested by Plaintiff's FOIA request; (2) order Defendant to produce, by a date certain, the non-exempt record requested; (3) enjoin Defendant from continuing to withhold the non-exempt record responsive to Plaintiff's FOIA request; (4) grant Plaintiff an award of attorneys' fees and other litigation costs reasonably incurred in this action pursuant to 5 U.S.C. § 552(a)(4)(E); and grant Plaintiff such other relief as the Court deem just and proper.


Dated July 7, 2015                          Respectfully submitted,


                                       */s/ Richard A. Koffman*
                                    Richard A. Koffman
                                    COHEN MILSTEIN SELLERS & TOLL PLLC
                                    1100 New York Ave. NW, Suite 500
                                    Washington, DC 20005
                                    Telephone: (202) 408-4600

                                    Howard Langer (*pro hac* pending)
                                    Peter Leckman (*pro hac* pending)
                                    LANGER GROGAN & DIVER, P.C.

1717 Arch Street, Suite 4130
Philadelphia, PA 19103
(215) 320-5660 Phone
(215) 320-5703 Fax

*Attorneys for Plaintiff*